*329
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 In October 1988, petitioner, an ophthalmologist, hired complainant as a secretary in his Manhattan office. Complainant was married and had an infant daughter. Approximately a year later, complainant informed petitioner that she might be pregnant, and the pregnancy was confirmed in December 1989. In early February 1990, petitioner told complainant that his wife suspected that complainant was carrying his child, and he added that complainant’s pregnancy was “becoming a problem” in the office.
 

 Later that month, complainant telephoned petitioner requesting two days off for doctors’ appointments — one for her own prenatal visit, the second for her daughter. Minutes after petitioner gave her permission to take the days off, his wife called complainant and screamed, “Why do you have so many appointments? * * * Get out of the office, you devil. Why are you so nice to my husband ***?*** All the clothes you wear, my husband bought them. * * * I know where you live. I’m the boss. * * * Get out. * * * I don’t believe you have a husband.” Petitioner’s wife had no supervisory authority over office personnel.
 

 About half an hour after the phone call, petitioner arrived at the office and called complainant into a private room. He said “Let’s avoid problems,” and handed her one check for that week’s pay and another for two weeks of unused vacation time. When complainant asked petitioner why he was terminating her, he replied, “it’s going to cause a lot of problems if you stay.” Although it is now undisputed that petitioner terminated complainant, he originally told both the Unemployment Insurance Board and the Division of Human Rights that she had quit. Petitioner’s other employees and temporary workers assumed her responsibilities.
 

 Complainant filed a complaint with the Division of Human Rights (DHR) in April 1990, alleging that she was unlawfully terminated based on her pregnancy, and in 1998 DHR Commissioner began hearings on the case. In October 2000, the Commissioner issued an order sustaining the complaint,
 
 *330
 
 concluding that petitioner terminated complainant because of her pregnancy in violation of Executive Law § 296 (1), and awarding her $168,414.17 in back pay (from February 1990, when she was terminated, to March 1997) and $10,000 for mental anguish.
 

 Petitioner brought this proceeding seeking to annul DHR’s order and challenging the amount of the back pay award. Complainant cross-petitioned for predetermination interest on the award and enforcement of the order. Upon transfer of both proceedings, the Appellate Division granted the petition, annulled the determination “on the law and the facts,” and denied complainant’s cross petition (293 AD2d 255, 255 [2002]). The Court concluded that there was no sex discrimination in that “[t]he record supports [petitioner’s] contention that he was forced to choose between keeping his secretary on the payroll and saving his marriage”
 
 (id.
 
 at 256). Because the Appellate Division failed to apply the proper standard of review, we reverse and remit for consideration of the arguments raised below with respect to damages.
 

 Article 15 of the Executive Law — known as the Human Rights Law — prohibits discharge of an employee because of pregnancy
 
 (see
 
 Executive Law § 296 [1];
 
 Elaine W. v Joint Diseases N. Gen. Hosp.,
 
 81 NY2d 211, 216 [1993]).
 

 The standards for establishing unlawful discrimination under section 296 of the Human Rights Law are the same as those governing title VII cases under the Federal Civil Rights Act of 1964
 
 (Ferrante v American Lung Assn.,
 
 90 NY2d 623, 629 [1997]). To establish a prima facie case of discrimination, complainant must first show by a preponderance of the evidence that he or she is a member of a protected class, discharged from a position for which he or she was qualified and that the discharge occurred under circumstances giving rise to an inference of discrimination. Once a prima facie case is made, the burden of production shifts to the employer to rebut the presumption with evidence that the complainant was discharged for a legitimate, nondiscriminatory reason. If such evidence is produced, the presumption is rebutted and the fact-finder must determine whether the proffered reasons are merely a pretext for discrimination. A factfinder who concludes that the proffered reasons are pretextual is permitted to infer the ultimate fact of discrimination but is not required to do so.
 

 As the United States Supreme Court recently made clear in setting out these steps for establishing a discrimination claim,
 
 *331
 
 “a plaintiffs prima facie case, combined with sufficient evidence to find that the employer’s asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated”
 
 (Reeves v Sanderson Plumbing Prods., Inc.,
 
 530 US 133, 148 [2000]). These same standards are applicable as well for establishing invidious discrimination in jury selection (see
 
 People v Smocum,
 
 99 NY2d 418 [2003]).
 

 Similarly, the standard for judicial review is clear. Judicial review of DHR’s determination made after a hearing is limited to consideration of whether substantial evidence supports the agency determination. Substantial evidence “means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact”
 
 (300 Gramatan Ave. Assoc. v State Div. of Human Rights,
 
 45 NY2d 176, 180 [1978]). Importantly, courts “may not weigh the evidence or reject [DHR’s] choice where the evidence is conflicting and room for a choice exists”
 
 (Matter of CUNY-Hostos Community Coll. v State Human Rights Appeal Bd.,
 
 59 NY2d 69, 75 [1983]).
 

 Here, the Appellate Division correctly articulated, but then misapplied, the relevant standards. The Court annulled the Commissioner’s determination “on the law and the facts,” which, under substantial evidence review, is error. The issue of whether substantial evidence supports an agency determination is solely a question of law
 
 (see Matter of Kelly v Safir,
 
 96 NY2d 32, 38 [2001];
 
 300 Gramatan Ave. Assoc.,
 
 45 NY2d at 181;
 
 see also
 
 Karger, Powers of the New York Court of Appeals § 77 [d], at 478-479 [3d ed]). Because substantial evidence supports the Commissioner’s determination that the discharge was discriminatory, it is irrelevant that the record could also support petitioner’s explanation — preferred by the Appellate Division — that he discharged complainant in order to save his marriage and not because of her pregnancy.
 

 Petitioner’s remark that complainant’s pregnancy was “becoming a problem” in the office, followed by complainant’s request for time off for a prenatal appointment, petitioner’s wife’s objections about too many appointments and the discharge that same day, are sufficient to support the agency’s finding of a prima facie case. The burden then shifted to petitioner to establish that complainant was fired for a legitimate, nondiscriminatory reason. Although petitioner came forward with facially legitimate reasons for the termination, the Commissioner found the proffered reasons incredible and unsubstantiated.
 

 
 *332
 
 DHR’s rejection of petitioner’s first reason — that complainant was terminated by petitioner’s wife because they did not get along — is supported by record evidence that petitioner’s wife had no supervisory authority over complainant and no business relationship with complainant. DHR’s rejection of petitioner’s second reason — that complainant had a time and attendance problem — is supported by petitioner’s concession that he was satisfied with her job performance, as well as the absence of any records to substantiate a time or attendance problem. Thus, both the finding of a prima facie case and the rejection of petitioner’s proffered reasons are supported by substantial evidence, and the Commissioner’s determination of unlawful discrimination should not have been disturbed.
 

 Finally, in concluding that petitioner did not unlawfully discriminate when he acceded to his wife’s wishes, the Appellate Division cited to cases in which the court rejected sex discrimination claims where plaintiffs were terminated in the aftermath of consensual sexual relationships with their employers
 
 (see e.g. Kahn v Objective Solutions, Intl.,
 
 86 F Supp 2d 377 [SD NY 2000]). Those cases are inapposite here, as neither party alleges that the termination had anything to do with an actual sexual relationship between the parties.
 

 Because the Appellate Division never reached the parties’ arguments concerning the exceedingly high back pay award, we remit for a consideration of those issues.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate Division for further proceedings in accordance with this opinion.
 

 Judges Smith, Ciparick, Wesley, Rosenblatt, Graffeo and Read concur.
 

 Order reversed, etc.