Matter of Copiague Union Free Sch. Dist. v Foster (2020 NY Slip Op 04303)





Matter of Copiague Union Free Sch. Dist. v Foster


2020 NY Slip Op 04303


Decided on July 29, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 29, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
JOHN M. LEVENTHAL
SHERI S. ROMAN
ROBERT J. MILLER, JJ.


2018-03287
 (Index No. 4482/17)

[*1]In the Matter of Copiague Union Free School District, petitioner/cross respondent, 
v
Helen Diane Foster, etc., et al., respondents/cross petitioners, Willie E. Chaplin, respondent.


Devitt Spellman Barrett, LLP, Smithtown, NY (John M. Denby of counsel), for petitioner/cross respondent.
Caroline J. Downey, Bronx, NY (Toni Ann Hollifield of counsel), for respondents/cross petitioners.
Gary P. Field, Huntington, NY, for respondent.



DECISION & JUDGMENT
Proceeding pursuant to Executive Law § 298 and CPLR article 78 to review a determination of the Commissioner of the New York State Division of Human Rights dated June 29, 2017, and cross petition by Helen Diane Foster, Commissioner of the New York State Division of Human Rights, and the New York State Division of Human Rights pursuant to Executive Law § 298 to enforce the determination. The determination adopted the alternative proposed order dated May 24, 2017, of adjudication counsel, made after a hearing before an administrative law judge, finding that the petitioner/cross respondent unlawfully discriminated against the complainant by providing a negative employment reference to a prospective employer in retaliation for protected activity in violation of Executive Law § 296, awarding the complainant compensatory damages in the principal sum of $5,000 for mental anguish, plus interest at the rate of nine percent per year from June 29, 2017, and assessing a civil fine and penalty against the petitioner/cross respondent in the principal sum of $10,000, plus interest at the rate of nine percent per year from June 29, 2017.
ADJUDGED that the determination is confirmed, the petition is denied, the proceeding is dismissed on the merits, and the cross petition is granted, with one bill of costs to the respondents/cross petitioners and the respondent appearing separately and filing separate briefs.
In 1999, the complainant, Willie E. Chaplin, was hired as a technology education teacher by the petitioner/cross respondent, Copiague Union Free School District (hereinafter school district), to work at the Copiague Middle School. The school district granted Chaplin tenure in 2002. In 2013, Chaplin filed a complaint with the respondent/cross petitioner New York State Division of Human Rights (hereinafter SDHR), alleging that the school district had engaged in unlawful discriminatory practices relating to employment, in violation of the New York State Human Rights Law (Executive Law § 290 et seq.; hereinafter the initial complaint). Thereafter, the school district filed disciplinary charges pursuant to Education Law § 3020-a against Chaplin.
Chaplin and the school district resolved the initial complaint and the school district's disciplinary charges by stipulation executed on May 12, 2014. The stipulation provided, inter alia, that Chaplin was to resign from his position with the school district effective June 30, 2014. In addition, Chaplin was to receive a monetary settlement payable by the school district and, with respect to inquiries made by Chaplin's prospective future employers, the school district was to provide Chaplin with a letter confirming his former position and his dates of employment.
Thereafter, Chaplin applied for numerous teaching positions. He interviewed for five positions with various school districts, including one for a temporary leave replacement position in the Oceanside Union Free School District (hereinafter Oceanside UFSD). After an interview with Chaplin, Jill DeRosa, the assistant superintendent for human resources for the Oceanside UFSD, DeRosa contacted Andrew Lagnado, the principal of the school district's middle school since 2010, about Chaplin's potential employment. Ultimately, Chaplin was not hired by the Oceanside UFSD or any of the other four school districts with which he interviewed.
Subsequently, in November 2014, Chaplin filed a second complaint with the SDHR, alleging that the school district unlawfully discriminated against him in violation of Executive Law § 296 by providing negative employment references to prospective employers in retaliation for having filed the initial complaint. At a hearing, Chaplin testified about his interview with the Oceanside UFSD, as well as those with the Lindenhurst Public Schools, the Board of Cooperative Educational Services of Western Suffolk County, the Roosevelt School District, the Lawrence Middle School, and the Elmont Union Free School District. Along with Chaplin's testimony, he submitted into evidence, inter alia, an employment packet which he had received from the Roosevelt School District after his interview but before he was advised that he was not being hired.
Chaplin also presented DeRosa's testimony that she contacted Lagnado because she was interested in hiring Chaplin but had reservations due to the unsatisfactory explanation Chaplin gave her as to why he abruptly left his tenured position with the school district. DeRosa also testified that, upon contacting Lagnado, with whom she had previously worked for four years in another district, Lagnado told her that he did not feel that Chaplin would necessarily be a good fit or match for the Oceanside UFSD position. DeRosa testified that she decided not to hire Chaplin because of his inadequate response to her question about the reason he left the school district.
Chaplin also called Lagnado as a witness. Lagnado denied expressing any opinion about Chaplin to DeRosa. The school district did not call any witnesses on its behalf or submit any documentary evidence.
Following the hearing, the administrative law judge (hereinafter ALJ) issued recommended findings, recommending dismissal of Chaplin's claim. The respondent/cross petitioner Commissioner of the SDHR reopened the hearing record and returned the matter to the ALJ for further consideration. The ALJ issued amended recommended findings reaching the same factual and legal findings he had reached initially. Thereafter, the SDHR's adjudication counsel issued an alternative proposed order dated May 24, 2017, in which it was found that the school district unlawfully discriminated against Chaplin by providing a negative employment reference solely with respect to the Oceanside UFSD in retaliation for Chaplin filing the initial complaint. In a determination dated June 29, 2017, the Commissioner of the SDHR adopted the alternative proposed order, finding, inter alia, that the school district had engaged in unlawful retaliatory behavior against Chaplin, awarding Chaplin compensatory damages in the principal sum of $5,000 for mental anguish, and assessing a civil fine and penalty against the school district in the principal sum of $10,000.
The school district commenced this proceeding pursuant to Executive Law § 298 and CPLR article 78 to review the Commissioner's determination, and the SHDR cross-petitioned to enforce the determination. By order dated November 8, 2017, the Supreme Court transferred this proceeding to this Court pursuant to CPLR 7804(g). We deny the petition and grant the cross petition.
"The scope of judicial review under the Human Rights Law is extremely narrow and is confined to the consideration of whether the determination of the SDHR is supported by substantial evidence in the record" (Matter of New York State Div. of Human Rights v Roadtec, Inc., 167 AD3d 898, 899; see Rainer N. Mittl, Opthalmologist, P.C. v New York State Div. of Human Rights, 100 NY2d 326, 331). "Substantial evidence means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact'" (Rainer N. Mittl, Opthalmologist, P.C. v New York State Div. of Human Rights, 100 NY2d at 331 quoting 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180). "Under a substantial evidence review, courts may not weigh the evidence or reject [the Commissioner's] choice where the evidence is conflicting and room for a choice exists'" (Matter of Argyle Realty Assoc. v New York State Div. of Human Rights, 65 AD3d 273, 283, quoting Matter of CUNY-Hostos Community Coll. v State Human Rights Appeal Bd., 59 NY2d 69, 75).
Under Executive Law § 296, it is unlawful to retaliate against an employee opposing discriminatory practices (see Executive Law § 296[1][e]; [7]; Overbeck v Alpha Animal Health, P.C., 124 AD3d 852, 853). To set forth an unlawful retaliation claim, an employee must show that "(1) [he or] she has engaged in protected activity, (2) [his or] her employer was aware that [he or] she participated in such activity, (3) [he or] she suffered an adverse employment action based upon [his or] her activity, and (4) there is a causal connection between the protected activity and the adverse action" (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 313; see Ruane-Wilkens v Board of Educ. of City of N.Y., 56 AD3d 648, 649). Once this initial burden has been met, "the burden then shifts to [the employer] to present legitimate, independent and nondiscriminatory reasons to support [its] actions" (Pace v Ogden Servs. Corp., 257 AD2d 101, 104; see Delrio v City of New York, 91 AD3d 900, 900-901).
Here, there is substantial evidence in the record to support the SDHR's finding that Lagnado provided the Oceanside UFSD with a negative reference in response to DeRosa's inquiry about Chaplin, which was an adverse employment action related to the filing of his initial complaint (see e.g. Hashimoto v Dalton, 118 F3d 671, 674 [9th Cir]; Beckett v Prudential Ins. Co. of Am., 893 F Supp 234, 240 [SD NY]; see generally Matter of Argyle Realty Assocs. v New York State Div. of Human Rights, 65 AD3d at 283). The six-month period which elapsed between the protected activity and the retaliatory conduct was not so attenuated that there could be no causal connection between the two (see Summa v Hofstra Univ., 708 F3d 115, 128 [2d Cir]; Grant v Bethlehem Steel Corp., 622 F2d 43, 45-46 [2d Cir]). Thus, the burden shifted to the school district to present evidence of a legitimate, independent, and nondiscriminatory reason to support Lagnado's action, and the school district failed to do so.
The award of compensatory damages for mental anguish is reasonably related to the wrongdoing, supported by substantial evidence, and comparable to other awards for similar injuries (see Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d 207, 215; Matter of New York State Div. of Human Rights v Camparella, 82 AD3d 773, 775; Matter of Mohawk Val. Orthopedics, LLP v Carcone, 66 AD3d 1350, 1351).
"A court may set aside an administrative penalty only if it is so disproportionate to the offense as to be shocking to one's sense of fairness" (Matter of Thomas v Town of Southeast, N.Y., 168 AD3d 955, 957). Here, we perceive no basis for disturbing the civil fine and penalty assessed against the school district (see Matter of Murphy v Kirkland, 88 AD3d 267, 278).
Accordingly, we confirm the determination, deny the petition, dismiss the proceeding on the merits, and grant the cross petition.
AUSTIN, J.P., LEVENTHAL, ROMAN and MILLER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court